**Sylwia JANKOWSKI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Nos. Civ.A.3:00–CV2402JCH, Civ.A. 3:00–CV2466JCH.**

United States District Court, D. Connecticut.

April 12, 2001.

RULING ON PETITION FOR HABEAS CORPUS [DKT. NO. 1], MOTION FOR STAY OF DEPORTATION [DKT. NO. 3], AND MOTION FOR RELEASE ON PETITIONERS OWN RECOGNIZANCE [DKT. NO. 7]

HALL, District Judge.

The petitioner, Sylwia Jankowski, is a lawful permanent resident alien ("LPR"), who is currently being detained at the York Correctional Institute in Niantic, Connecticut. After being convicted in the Eastern District of Missouri on January 28, 1999, of knowingly taking with the intent to steal more than $1,000, representing deposits that were federally insured, the Immigration and Naturalization Service ("INS") instituted removal proceedings against her on March 21, 2000 pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii). Immediately following a hearing on May 3, 2000, an Immigration Judge ("IJ") entered an order finding the petitioner removable to Poland. In the Order, the IJ noted that the petitioner had made no application for relief from removal. The petitioner appealed this order to the Board of Immigration Appeals ("BIA"), which dismissed the appeal on November 16, 2000.

The petitioner filed a Petition for Writ of Habeas Corpus and a Motion to Stay Deportation in this court on December 18, 2000.[1] The court issued an Order to Show Cause on December 18, 2000, and following the court's appointment of counsel for the petitioner on March 8, 2001, the court heard oral argument on March 29, 2001.

The petitioner raises a challenge under the equal protection component of the Due Process Clause of the Fifth Amendment to the application of INA § 212(h), codified at 8 U.S.C. § 1182(h), the operation of which denies the petitioner the opportunity to apply for a discretionary waiver of removal due to her status as a LPR convicted of an aggravated felony. The petitioner also seeks an order staying removal of the petitioner pending the final resolution of the case. For the reasons below, the Petition [Dkt. No. 1] is GRANTED and the Motion for Stay of Deportation [Dkt. No. 3] and the Motion for Release on Petitioner's Own Recognizance [Dkt. No. 7] are DENIED as moot.[2]

## I. FACTS

### A. Petitioner's background

The following facts are not in dispute. The petitioner is a 25–year–old native of

---

1. The petitioner also filed a Petition for Writ of Habeas Corpus in a separate case, assigned case number 3:00–CV–2466, on December 26, 2000. This case was originally assigned to Judge Dorsey but was transferred to this court on March 8, 2001. The petition in the transferred case raises international law claims, which the petitioner has abandoned, and the equal protection claim raised in the petition in case number 3:00–CV–2402. In its ruling on the petition in case number 3:00–cv–2402, the court is treating the petitions as one insofar as it is relying upon facts and allegations from each of the petitions.

To the extent that the petitioner believes she has raised other claims in the transferred case that are not addressed herein and that are separate from the international law claims that have been abandoned by her, she may bring a motion to reconsider within ten (10) days in case number 3:00–CV–2466.

2. At oral argument, the court indicated its intention to proceed to decide the case on the merits unless the petitioner indicated the need for further proceedings, which the petitioner has not.

Poland, who entered the United States on November 15, 1983, as a refugee. Her status was adjusted to that of a LPR on May 6, 1985, retroactive to the date of her original entry. The petitioner has a six-year-old son who is a citizen of the United States.

The petitioner has been convicted of an "aggravated felony" as that term is used in 8 U.S.C. § 1227(a)(2)(A)(iii) and 8 U.S.C. § 1182(h) and defined in INA § 101(a)(43)(G), codified at 8 U.S.C. § 1101(a)(43)(G).[3] Upon the petitioner's release from incarceration, she was detained by the INS and subsequently ordered removed from the United States. She remains in custody in the District of Connecticut pending her removal. At oral argument, the government informed the court that the petitioner would not be removed before 5 p.m. on April 12, 2001.[4]

### B. Statutory provisions at issue

The petitioner's equal protection challenge centers on INA § 212(h), codified at 8 U.S.C. § 1182(h). This section provides, in pertinent part, that the Attorney General may grant a discretionary waiver from removal if the removable alien "is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence" and "the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien." 8 U.S.C. § 1182(h)(1)(B). Additionally, the Attorney General must consent "to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status." *Id.* § 1182(h)(2). In September 1996, this section was amended by section 348(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat.2009–546, which added the following language:

No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.

*Id.* § 1182(h).

As amended, section 1182(h)(1)(B) would provide a potential discretionary waiver for extreme family hardship for any LPR who is otherwise eligible, *i.e.*, "is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence," who has not been convicted of an aggravated felony, and who has lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of removal proceedings against her. *See In re Michel*, 21 I. & N.Dec. 1101 (BIA 1998). At the same time, the IIRIRA established expedited removal procedures under which any non-LPR, such as aliens who entered

---

3. 8 U.S.C. § 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." Under 8 U.S.C. § 1101(a)(43), "[t]he term 'aggravated felony' means—... (G) a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment at least one year." (footnote omitted).

4. Subsequently, the government has indicated that further delay in removing the petitioner was likely and extended its commitment to 5 p.m. on April 27, 2001.

the country illegally or overstayed their visas, can be removed from the United States. *See* 8 U.S.C. § 1228(b). However, 8 U.S.C. § 1228(b)(1) allows the Attorney General, in his discretion, to determine the removability of a criminal non-LPR under 8 U.S.C. § 1227(a)(2)(A)(iii) and issue an order of removal of a non-LPR pursuant to the procedures of 8 U.S.C. § 1229a, which would render a non-LPR potentially eligible for a discretionary waiver under section 1182(h), rather than the more restrictive, expedited removal proceedings provided for under 8 U.S.C. § 1228(b).

Discretionary relief under section 1182(h)(1)(B) is therefore also available to non-LPRs, so long as they are subject to removability in a proceeding under INA § 240, codified at 8 U.S.C. § 1229a, and not INA § 238(b), codified at 8 U.S.C. § 1228(b). *See In re Ayala–Arevalo*, Interim Dec. (BIA) 3371, 1998 WL 833810 (1998). On the other hand, under 8 U.S.C. § 1228(b)(5), a non-LPR subject to expedited removal proceedings is ineligible for any discretionary relief or waiver of removal.[5]

Both LPR and non-LPR aggravated felons are explicitly precluded from discretionary relief under section 1182(h) if they have been convicted of or have admitted committing acts that constitute "murder or criminal acts involving torture, or an attempt or conspiracy to commit murder or a criminal act involving torture." 8 U.S.C. § 1182(h). Moreover, neither LPRs nor non-LPRs are eligible for section 1182(h) relief if they have been convicted of a drug offense, except for "a single offense of simple possession of 30 grams or less of marijuana." *Id.* The petitioner was con-

victed of knowingly taking with the intent to purloin or steal a quantity of United States currency exceeding $1,000, representing deposits that were federal insured, in violation of 18 U.S.C. § 2113(b), which, if she were a non-LPR subject to 8 U.S.C. § 1229a removal proceedings, would not preclude her from an opportunity to seek a discretionary waiver of removal on the basis of extreme family hardship under 8 U.S.C. § 1182(h)(1)(B).

## II. DISCUSSION

### A. Jurisdiction

As a general matter, this court has jurisdiction over habeas petitions brought by aliens pursuant to 28 U.S.C. § 2241. *See Calcano–Martinez v. INS*, 232 F.3d 328, 342 (2d Cir.2000); *St. Cyr v. INS*, 229 F.3d 406, 409–10 (2d Cir.2000); *Henderson v. INS*, 157 F.3d 106, 122 (2d Cir.1998). The government argues, however, that the court lacks jurisdiction over the pending petition because the petitioner failed to exhaust her administrative remedies by presenting her equal protection challenge to the IJ and BIA. In response, the petitioner notes that an exception to an exhaustion requirement exists where an administrative appeal would be futile or where a petitioner raises a constitutional claim, as here, that cannot be decided by the administrative agency. The government in turn argues that such exceptions to the exhaustion requirement based on the IJ's and BIA's inability to pass on constitutional challenges to the INA do not apply when a statute conditions jurisdiction upon exhaustion.

---

**5.** Even if the Attorney General allows removal proceedings to proceed pursuant to section 1229a against a non-LPR subject to removal under section 1227(a)(2)(A)(iii) for conviction of an aggravated felony, INS regulations codified at 8 C.F.R. § 238.1 provide that an IJ

may, at the INS's request, discontinue the removal proceedings against a criminal non-LPR under the procedures of section 1229a, so that the INS can commence expedited removal proceedings under section 1228(b) against the non-LPR. *See* 8 C.F.R. § 238.1(e).

In support of its argument, the government notes that 8 U.S.C. § 1252(d) provides:

A court may review a final order of removal only if—

(1) the alien has exhausted all administrative remedies available to the alien as of right, and

(2) another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order.

The government places heavy reliance on *Bastek v. Federal Crop Insurance Corp.,* 145 F.3d 90, 94 & n. 4 (2d Cir.1998). In *Bastek,* the court stated that, "[i]f Congress has not explicitly required exhaustion, judicial exhaustion doctrine provides that courts may, in their discretion, waive administrative exhaustion under certain circumstances." 145 F.3d at 94. The government argues that the language of 8 U.S.C. § 1252(d) creates a jurisdictional statutory exhaustion requirement which is applicable to this case. The government contends that it is therefore mandatory that the petitioner raise her equal protection claim before the IJ or BIA before bringing a habeas petition on the basis of this claim.

■ At the same time, the government does not dispute that the IJ and BIA do not have authority to adjudicate constitutional challenges to the INA. *See Arango–Aradondo v. INS,* 13 F.3d 610, 614 (2d Cir.1994); *Matter of C-,* 20 I. & N.Dec. 529, 532 (BIA 1992); *Matter of Anselmo,* 20 I. & N.Dec. 25, 30 (BIA 1989). The government asserted at oral argument, however, that the petitioner should be required to present the equal protection challenge to the IJ and BIA in the first instance so that they might have an opportunity to adjust the ruling on the petitioner's removability so as to avoid the constitutional issue. *See Kai Wu Chan v. Reno,* No. 95 Civ. 2586, 1997 WL 122783, at *11 (S.D.N.Y. Mar. 17, 1997) (addressing a similar argument in the context of a status adjustment).

The crux of the issue, then, is whether section 1252(d) applies to the petitioner's claim and therefore, under *Bastek,* precludes the application of any exception to the exhaustion requirement. Turning to the statutory language invoked by the government, the court notes that section 1252(d), enacted as part of section 306(a) of the IIRIRA, provides that no "court may review a final order of removal" if, *inter alia,* an "alien has [not] exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). Several courts have held that, under section 1252(d)(1), exhaustion is statutorily required only for appeals to Courts of Appeals of final orders of removal. *See Welch v. Reno,* 101 F.Supp.2d 347, 351 (D.Md.2000); *Galvez v. Lewis,* 56 F.Supp.2d 637, 644 (E.D.Va.1999); *Rowe v. INS,* 45 F.Supp.2d 144, 145–46 (D.Mass. 1999). These courts have held that exhaustion is not required if a habeas petitioner challenges his continued detention, *Welch,* 101 F.Supp.2d at 351, or his conditions imposed on bond, *Galvez,* 56 F.Supp.2d at 644; *Rowe,* 45 F.Supp.2d at 146.

The court must consider the statutory and procedural posture under which the petitioner brings her claim to determine whether she seeks to have this court "review a final order of removal" within the meaning of 8 U.S.C. § 1252(d). As noted above, the Second Circuit has held that this court generally maintains habeas jurisdiction over aliens constitutional challenges under 28 U.S.C. § 2241 because

"the permanent rules of IIRIRA do not divest Article III courts of their habeas jurisdiction under 28 U.S.C. § 2241 to review statutory and constitutional challenges to final removal orders when no other avenue for judicial review is available." *St. Cyr*, 229 F.3d at 409; *see also Calcano–Martinez*, 232 F.3d at 337 ("Article III courts continue to have habeas jurisdiction under 28 U.S.C. § 2241 over legal challenges to final removal orders"). "Although a federal court of appeals generally retains jurisdiction under INA § 242(a)(1) to review a legal resident alien's challenge to his or her final order of removal, INA § 242(a)(2)(C) excepts this review for a petition filed by a detained alien ordered removable because of a criminal conviction." *Calcano–Martinez*, 232 F.3d at 341. The combined effect of INA § 242(a)(1)–(a)(2), codified at 8 U.S.C. § 1252(a)(1)–(2), would be that, "[w]ithout habeas jurisdiction to review final orders, there is currently no judicial review at all of a removal order issued against a noncitizen who is ordered removable because he or she committed a certain crime." *Id.* at 342; *see also id.* at 337 ("We do not read any exceptions into INA § 242(a)(2)(C) that bars our jurisdiction over petitions to review removal orders against aliens convicted of certain crimes.").

■ At the same time, the Court of Appeals noted that, "[a]lthough not all challenges that an alien may launch against his removal are cognizable under habeas, purely legal statutory and constitutional claims are within § 2241's scope." *Id.* at 342. The Second Circuit has thus affirmed a district court's finding of jurisdiction over a section 2241 habeas petitioner which raised "pure questions of law," *i.e.*, "the BIA's determination that it cannot legally consider St. Cyr's request to exercise its discretion," rather than a challenge to "the BIA's refusal to exercise its discretion in his favor." *St. Cyr*, 229 F.3d at 410. The court concludes that section 1252(d) applies only to judicial review of final orders of removal in the Courts of Appeals pursuant to 8 U.S.C. § 1252(a)(1).[6]

The court also finds that the petitioner did not have "available" to her "as of right" the opportunity to present her constitutional claim to the IJ and BIA. 8 U.S.C. § 1252(d)(1). Indeed, the IJ and the BIA ruled explicitly, in response to the petitioner's other equal protection and due process arguments, that such claims cannot be adjudicated by either the IJ or the BIA.[7] *See* Brief in Support of Motion for Stay of Removal (Dkt. No. 9), Ex. A & B. Thus, for this alternative reason, the court finds that section 1252(d) does not create a statutory, jurisdictional exhaustion requirement for constitutional claims raised

---

**6.** The fact that such final review in the Court of Appeals is unavailable to the petitioner here due to the operation of INA § 242(a)(2)(C), codified at 8 U.S.C. § 1252(a)(2)(C), does not dictate that the scope of section 1252(d)'s exhaustion requirement should be expanded to provide a statutory exhaustion requirement for habeas petitions under 28 U.S.C. § 2241. The statute that the government relies upon for its claim that there is a jurisdictional exhaustion requirement refers only to "a final order of review." *See* 8 U.S.C. § 1292(d).

**7.** The BIA may have considered the particular equal protection claim raised by the petitioner in the instant petition, but the court cannot be certain on the basis of the petitioner's brief to the BIA and the BIA's short letter decision denying her appeal. *See* Supplement Response to Petitions for Writ of Habeas Corpus (Dkt. No. 8), Ex. A; Brief in Support of Motion for Stay of Removal (Dkt. No. 9), Ex. B. Given the conclusion the court reaches, the court will assume that the petitioner did not raise the instant issue below before the IJ or BIA, although she raised other due process and equal protection claims.

by aliens like the petitioner in habeas proceedings.

As such, on both grounds, the statutory exhaustion requirement of section 1252(d) does not apply by its own terms to the petitioner's equal protection claim. Unlike the statutory exhaustion language at issue in *Bastek* under 7 U.S.C. § 6912(e), which provided that "a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person *may bring an action* in a court of competent jurisdiction," the language in 8 U.S.C. § 1292(d) provides only that "[a] court *may review a final order of removal* only if—(1) the alien has exhausted all administrative remedies available to the alien as of right...." *Compare* 7 U.S.C. § 6912(e) (emphasis added) with 8 U.S.C. § 1292(d)(1) (emphasis added). *Bastek* therefore does not preclude the application to the petitioner's claims of prudential exceptions to the exhaustion requirement.

The court also notes, with regard to the government's justification for why the petitioner should have presented her constitutional claim to the IJ and BIA, that there is no suggestion that the petitioner is not removable under 8 U.S.C. § 1227(a)(2)(A)(iii) or that the plain language of 8 U.S.C. § 1182(h) precludes her from receiving a discretionary waiver on the basis of extreme family hardship under section 1182(h)(1)(B). The court must conclude, therefore, that the IJ or BIA could not have decided any differently had the petitioner raised her equal protection challenge to section 1182(h) below. The court also concludes that the petitioner has not raised a procedural error of the sort which the BIA could correct. *See Arango–Aradondo,* 13 F.3d at 614; *see also Mendes v. INS,* 197 F.3d 6, 12 (1st Cir.1999). Finally, this case is distinguishable from others where the petitioner entirely waived her right to appeal to the BIA, which some courts have held would preclude jurisdiction under the exhaustion requirement over a habeas petition. *See, e.g., United States v. Sanchez–Peralta,* No. 97 CR. 536, 1998 WL 63405, at * 11 (S.D.N.Y. Feb. 13, 1998) (exhaustion under 8 U.S.C. § 1326(d)).

Because a statutory exhaustion requirement does not apply to the petitioner's claim, the court concludes that the petitioner's claim will be excepted from any exhaustion requirement on the basis that the petitioner raised a constitutional issue for which administrative remedies offer no adequate relief and which would be futile to raise before the IJ or BIA. *See Bastek,* 145 F.3d at 94 n. 4; *Howell v. INS,* 72 F.3d 288, 291 (2d Cir.1995); *see also Maria v. McElroy,* 68 F.Supp.2d 206, 219 (E.D.N.Y.1999); *Cabreja–Rojas v. Reno,* 999 F.Supp. 493, 496 (S.D.N.Y.1998); *Kai Wu Chan,* 1997 WL 122783, at *10–*11. The court concludes that it will, in its discretion, waive any exhaustion requirement with regard to the petitioner's equal protection challenge because the IJ and BIA, by their own rulings, lack institutional competence to resolve the particular type of issue presented here, the constitutionality of a statute that they are charged with enforcing. *See Bastek,* 145 F.3d at 94 n. 4; *Arango–Aradondo,* 13 F.3d at 614. The court therefore has jurisdiction over the petitioner's claim.

## B. Petitioner's equal protection claim

The petitioner argues that INA § 212(h), codified at 8 U.S.C. § 1182(h), violates the equal protection component of the Due Process Clause of the Fifth Amendment because it provides for discretionary relief from removal to non-LPRs who have committed certain crimes and have immediate family members who are citizens or legal permanent residents of

the United States, to whom the non-LPRs' removal would be an extreme hardship, but precludes such relief from LPRs who committed the same crimes and also have U.S. citizen or resident family members, to whom the LPRs' removal would be an extreme hardship. The petitioner argues that there is no rational basis for such a disparity of treatment between similarly-situated non-LPRs and LPRs, and that section 1182(h) is therefore unconstitutional and must be struck down.

■ "[T]here is a well-established equal protection component to the Fifth Amendment Due Process Clause applicable to the federal government.... Accordingly, even though the Fifth Amendment itself—unlike the Fourteenth—does not contain any specific equal protection language, the INS and the statutory authority under which the INS acts must still comport with equal protection principles." *Skelly v. INS*, 168 F.3d 88, 91 (2d Cir.1999) (citations omitted). There is no dispute in this case that the petitioner, as a LPR, is entitled to equal protection of the law under the Fifth Amendment. *See id.; see also Domond v. INS*, 244 F.3d 81, 86 (2d Cir.2001).

■ It is also undisputed that distinctions made by Congress among aliens, including that established in 8 U.S.C. § 1182(h), are subject only to rational basis review. *Rojas–Reyes v. INS*, 235 F.3d 115, 122 (2d Cir.2000). The court recognizes that "Congress deserves special deference in the area of immigration and naturalization.'" *Id.* (quoting *Skelly*, 168 F.3d at 91). Congress's classifications in immigration legislation will survive equal protection challenges so long as there is a facially legitimate and bona fide reason for the statutory classification. *Skelly*, 168 F.3d at 91. "[R]ational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.' *FCC v. Beach*

*Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 2100–2101, 124 L.Ed.2d 211 (1993). *See also, e.g., Dandridge v. Williams,* 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). Nor does it authorize 'the judiciary [to] sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.' *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam)." *Heller v. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).

■ The court takes as its guiding principle in this analysis that a statutory "classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at 320, 113 S.Ct. 2637. That is, "[a] statutory classification fails rational-basis review only when it rests on grounds wholly irrelevant to the achievement of the State's objective." *Id.* at 324, 113 S.Ct. 2637 (quoting *Holt Civic Club v. Tuscaloosa,* 439 U.S. 60, 71, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978)) (internal quotation marks omitted). The petitioner thus faces a very heavy burden, because rational basis is a slight standard of review. *See Domond,* 244 F.3d 81, 87.

■ Under rational basis review, a statute must be accorded a strong presumption of validity and will be upheld if any reasonably conceivable state of facts could demonstrate that the statute is rationally related to a legitimate government purpose. *Rojas–Reyes,* 235 F.3d at 123. "The government need only articulate a rational reason for making the distinction, and need not provide any evidence to support the rationality of the reason. Further, the reason need not be one actually

considered by Congress." *Domond,* 244 F.3d 81, 87 (citation omitted). Indeed, "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.'" *Heller,* 509 U.S. at 320, 113 S.Ct. 2637 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973)).

■ Before turning to the rationales offered by the government, the court will, as an initial matter, address the government's argument that the petitioner, as a LPR convicted of an aggravated felony, is not similarly situated to a non-LPR convicted of the same crime and the court should not even reach an equal protection analysis. *See Able v. United States,* 155 F.3d 628, 631 (2d Cir.1998) (discussing the similarly situated requirement). The court rejects this argument. The Second Circuit has found a deportee to be similarly situated to an excludee "when the ground for the deportee's removal from the country is the same as the ground for the excludee's denial of admission." *Cato v. INS,* 84 F.3d 597, 599 (2d Cir.1996). Analogously, the petitioner is similarly situated to any non-LPR who is facing removal—and the need, therefore, for a 8 U.S.C. § 1182(h) discretionary waiver—on the basis of a conviction for an aggravated felony and who has U.S. citizen or resident family members. As such, the only distinction between the petitioner and such a non-LPR is the petitioner's LPR status upon which the operation of 8 U.S.C. § 1182(h) turns. It is, of course, precisely this distinction which the petitioner challenges as violative of her right to equal protection.

■ Turning to an application of the rational basis equal protection standard, the court first notes that there is no dispute that, in passing the IIRIRA, and particularly the amendments to 8 U.S.C. § 1182(h), Congress sought to expedite the removal of criminal aliens from the United States. *See Domond,* 244 F.3d 81, 87. The petitioner does not dispute that this is a legitimate government interest under Congress's plenary power over immigration. *See* Brief in Support of Petition for Writ of Habeas Corpus (Dkt. No. 11) at 19. As the petitioner notes, however, had she not already obtained LPR status at the time of her conviction, she would now be eligible to apply for an extreme family hardship waiver under 8 U.S.C. § 1182(h). The petitioner's dispute, then, is not with the legitimacy of Congress's purpose in enacting the IIRIRA but with Congress creating a statutory distinction in 8 U.S.C. § 1882(h) between LPRs and non-LPRs which, she claims, bears no rational relationship to this purpose, in situations such as here where LPRs and non-LPRs have committed the same aggravated felonies.

Although the government has offered several putative rational bases for the classification contained in 8 U.S.C. § 1182(h), the court need find only one such rational basis to uphold the statutory provision against the petitioner's equal protection challenge. Nevertheless, even applying this minimal standard, courts have held that statutes failed rational basis review where no rational relationship existed between the statutory distinction or disparity of treatment and any legitimate government purpose.

In the immigration context, in particular, the Second Circuit held that a provision of INA § 212(c) violated equal protection because "the statute as so applied creates two classes of aliens identical in every respect except for the fact that members of one class have departed and returned to this country at some point after they became deportable" and this "distinction is not rationally related to any legitimate purpose of the statute." *Francis v. INS,* 532 F.2d 268, 272 (2d Cir.1976).

Under the Second Circuit's interpretation of the relevant statutory scheme in *Francis*, "an alien who had been convicted of two crimes involving moral turpitude and, therefore, was deportable under Section 241(a)(4), 8 U.S.C. § 1251(a)(4) was eligible for Section 212(c) discretion because he was able to demonstrate that several months after his last conviction he left the country for a few hours to attend a funeral in Canada." *Id.* at 272–73. The Court of Appeals held that "[t]he government has failed to suggest any reason why this petitioner's failure to travel abroad following his conviction should be a crucial factor in determining whether he may be permitted to remain in this country." *Id.* at 273. The court noted that "[r]eason and fairness would suggest that an alien whose ties with this country are so strong that he has never departed after his initial entry should receive at least as much consideration as an individual who may leave and return from time to time." *Id.*

In *Francis*, the government argued "that Congress has chosen to treat these two classes of aliens somewhat differently by providing a separate but analogous scheme of discretionary relief to the non-departing alien," in that "Section 244(a)(2), 8 U.S.C. § 1254(a)(2), allows the Attorney General to exercise discretion regarding certain deportable aliens who have been in the country for ten years following the act which was the ground for deportation." *Id.* The *Francis* court rejected the government's argument that this provided a rational basis for treating non-departing aliens differently for purposes of discretionary section 212(c) waivers than returning aliens, because the Court of Appeals noted that the government's "argument overlooks the fact that a deportable resident alien who briefly sojourns in Bermuda and then returns is [also] eligible for discretionary consideration under Section 244(a)(2) as a non-

departing alien," and, "[i]n addition, if otherwise qualified, he is eligible for Section 212(c) relief." *Id.*

The Court of Appeals held that "[f]undamental fairness dictates that permanent resident aliens who are in like circumstances, but for irrelevant and fortuitous factors, be treated in a like manner." *Id.* The Court of Appeals acknowledged "the power of the Congress to create different standards of admission and deportation for different groups of aliens." *Id.* "However, once those choices are made, individuals within a particular group may not be subjected to disparate treatment on criteria wholly unrelated to any legitimate governmental interest." *Id.*

On the instant petition, this court concludes that the provision of 8 U.S.C. § 1182(h) precluding relief specifically for LPRs who have been convicted of an aggravated felony but not for non-LPRs who have been convicted of the same aggravated felony is not rationally related to the legitimate government purpose of expediting the removal of criminal aliens from the United States or even of removing as quickly as possible certain classes of criminal aliens, *i.e.*, those convicted of aggravated felonies as defined in 8 U.S.C. § 1101(a)(43). As the petitioner points out, these purposes would be more efficaciously achieved if section 1182(h) precluded the discretionary granting of waivers to non-LPR aggravated felons as well as LPR aggravated felons. Indeed, had Congress done so, or had Congress even precluded only non-LPR aggravated felons from discretionary relief under 8 U.S.C. § 1182, the court would likely find a rational basis for the statutory provision. Such a basis for the latter action would lie, at least in part, in the fact that Congress and the courts have long favored LRPs over non-LPRs. *See, e.g.,* 8 U.S.C. § 1612(a)(2) (limitations on eligibility for

federal welfare benefits); *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) ("once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly"); *Mathews v. Diaz,* 426 U.S. 67, 69, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); *Francis,* 532 F.2d at 273; *cf. Plyler v. Doe,* 457 U.S. 202, 219 n. 19, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (rejecting the claim that illegal aliens are a suspect class because "entry into this class, by virtue of entry into this country, is the product of voluntary action," and, "[i]ndeed, entry into the class is itself a crime"). However, in an abrupt change of direction, Congress, in enacting amendments to 8 U.S.C. § 1182(h) under the IIRIRA, has established a statutory provision which places LPR aggravated felons in a disadvantaged position relative to non-LPR aggravated felons seeking discretionary waivers of removal on the ground of extreme family hardship.

To support the constitutionality of 8 U.S.C. § 1182(h), the government relies in part upon the recent holding of the Seventh Circuit in *Lara–Ruiz v. INS,* 241 F.3d 934 (7th Cir.2001). There, the Court of Appeals held that three rational bases supported the distinction between LPR and non-LPR aggravated felons under 8 U.S.C. § 1182(h), as amended by section 348(a) of the IIRIRA. The government urges, *inter alia,* these three rationales for the disparate treatment present in this case under 8 U.S.C. § 1182(h). The court does not agree that the three rationales accepted by *Lara–Ruiz* are rational bases for distinguishing between LPR and non-LPR aggravated felons in 8 U.S.C. § 1182(h).

The Seventh Circuit first observed that "[o]ne of Congress' purposes in enacting reforms to the INA through IIRIRA was

to expedite the removal of criminal aliens from the United States." 241 F.3d at 947. The court then held that

> [e]liminating the availability of § 212(h) relief for LPR aggravated felons would eradicate one source of delay that might thwart this effort. As the INS noted in its brief, without section 1182(h)(2), an LPR who is removable as an aggravated felon might apply to adjust his status, and seek re-"admission" to the United States as an LPR. If he could demonstrate that the certain equitable considerations qualify him for "readmission," then he could be granted a waiver of inadmissibility, thereby evading removal. This would subvert Congress' intention to make such aliens immediately removable.

*Id.*

The court concludes that this is not a rational basis for the disparity of treatment in 8 U.S.C. § 1182(h). Before and after the IIRIRA amendment to 8 U.S.C. § 1182(h), a non-LPR who is removable as an aggravated felon may also apply to adjust his status and seek readmission to the United States as a LPR. Whether the statutory procedure for adjustment of status under 8 U.S.C. § 1255 is considered a "loophole" or not, this procedure was statutorily available to non-LPRs as well as LPRs prior to the IIRIRA amendment to 8 U.S.C. § 1182(h). *See Matter of Alacorn,* 20 I. & N. Dec. 557 (BIA 1992). Indeed, both LPRs and non-LPRs who were already in the country would be expected to successfully apply to adjust their status *if they were to be granted relief* under 8 U.S.C. § 1182(h). *See* 8 U.S.C. § 1182(h)(2). Moreover, the court notes that the BIA has observed that "a section 212(h) applicant seeking to adjust his status need not be, and in most cases is not already, a lawful permanent resident...." *In re Mendez–Moralez,* 21 I. & N. Dec.

296, Interim Dec. (BIA) 3272, 1996 WL 227774 (1996). Therefore, as the petitioner points out, for the government to argue that Congress closed this "loophole" for LPR aggravated felons by amending section 1182(h) does not establish a rational relationship between the disparity of treatment of LPR and non-LPR aggravated felons and some legitimate governmental purpose, but instead merely puts the issue back where it started: determination of whether there a rational basis for closing off this avenue of discretionary relief to LPR aggravated felons but not to otherwise identically situated non-LPR aggravated felons.

As a second basis, the government relies on the Seventh Circuit's reasoning that closing the loophole as to LPR aggravated felons is but a "rational first step" toward achieving the larger goal of expediting the removal of criminal aliens from the United States. *Lara–Ruiz,* 241 F.3d at 947 (citing *McDonald v. Bd. of Election Comm'rs of Chicago,* 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969)). The Seventh Circuit held, with regard to this second basis, that, "[w]hile it might have been wiser, fairer, and more efficacious for Congress to have eliminated § 212(h) relief for non-LPR aggravated felons as well, the step taken by Congress was a rational first step toward achieving the legitimate goal of quickly removing aliens who commit certain serious crimes from the country...." *Id.* The distinction which Congress enacts in order to advance this "first step," however, must itself bear a rational relationship to a legitimate government purpose. *See Brown v. Bowen,* 905 F.2d 632, 637 (2d Cir.1990). In this case, Congress would have enacted a rational first step if it had chosen to preclude only LPRs and non-LPRs who committed certain felonies, but allowed felons who committed other, perhaps less serious crimes to remain eligible for discretionary relief. This would bear a rational relationship to an initial goal of removing the worst criminal aliens from the country in furtherance of a latter goal of expediting the removal of all criminal aliens.

However, Congress, whether by design or mistake, enacted a provision in 8 U.S.C. § 1182(h) whereby Congress closed the door on discretionary waivers and the possibility of adjustment of status to LPR aggravated felons but not to non-LPR aggravated felons, even when these aliens are all convicted of the same aggravated felony. As the district court in *Song v. INS* observed, "[t]he fact that individuals may be convicted of exactly the same 'aggravated felony' yet subject to different consequences distinguishes this case from the cases in which aliens have unsuccessfully argued that the distinction between similar crimes violates equal protection." 82 F.Supp.2d 1121, 1133 n. 16 (C.D.Cal. 2000). In doing so, with its purported "first step" in the instant case, "Congress has created a distinction which rewards those necessarily guilty of at least two crimes, illegal entry [or overstaying a visa] and the 'aggravated felony,' by treating them better than individuals guilty only of the same 'aggravated felony.'" *Id.* at 1133. This court concludes that such a distinction does not bear a rational relationship to the legitimate government purpose of expediting the removal of criminal aliens from the United States, even though the act of removing criminal LPRs, in and of itself, does further the goal of removing criminal aliens.

As a third basis to uphold the classification in 8 U.S.C. § 1182(h), the Seventh Circuit held that, because "LPRs enjoy rights and privileges by virtue of their status which are not shared by non-LPRs, and they typically have closer and longer-standing ties to the United States through employment and family relationships," it

would be rational for Congress to "have concluded that LPRs who commit serious crimes despite these factors are uniquely poor candidates for relief from removal through the 'backdoor' of waiver of inadmissibility." *Lara–Ruiz*, 241 F.3d at 947.

In banning only LPR aggravated felons from waiver eligibility, Congress might well have found it significant that, unlike non-LPR aggravated felons, such aliens have already demonstrated that closer ties to the United States and all of the benefits attending LPR status were insufficient to deter them from committing serious crimes. Therefore, Congress might have reasoned that LPR aggravated felons were a higher risk for recidivism, and were generally less deserving of a second chance than were non-LPR aggravated felons. Congress may plausibly have concluded that, if one of these groups should be allowed to apply for a second chance, it should be the non-LPR aggravated felons who did not have all of the benefits of LPR status when they committed their crimes.

*Id.* at 947–48.

In endorsing this third ground, the Seventh Circuit did not address itself to the relationship between the disparity of treatment established by 8 U.S.C. § 1182(h) and the legitimate governmental purpose of expediting the removal of criminal aliens. *Compare Lara–Ruiz*, 241 F.3d at 947–48, *with Heller*, 509 U.S. at 320, 113 S.Ct. 2637. Ensuring the removal of only LPR aggravated felons, but not non-LPR aggravated felons, on the basis of the LPR aggravated felons having abused their benefits and concomitant responsibilities as LPRs, is, at best, related to a goal of removing the most allegedly undeserving criminal aliens or encouraging lawfulness by non-criminal LPRs, but not to the legitimate government purpose of expediting the removal of all criminal aliens.

This putative basis for the disparity of treatment in 8 U.S.C. § 1182(h) is also not rational because Congress has so long favored LPRs, who are legally living in the United States, over non-LPRs, including illegal aliens and aliens who have overstayed their visas. *See supra* at 279–80. In particular, the distinction at issue under 8 U.S.C. § 1182(h) is between LPRs and non-LPRs who all have citizen or LPR family members and who are all aggravated felons. The non-LPRs at issue, therefore, have already violated federal or state law twice: by committing an aggravated felony as defined in 8 U.S.C. § 1101(a)(43) and by entering or at least remaining unlawfully in the United States. Congress and the courts have never before given illegal aliens a second chance in preference to aliens who were lawfully living in this country. The court cannot accept the government's characterization of non-LPR aggravated felons who seek waivers under 8 U.S.C. § 1182(h) as seeking an immigration benefit for the first time. The enactment of the expedited removal procedures under 8 U.S.C. § 1228(b) itself strongly evidences the absence of any purpose on Congress's part to keep criminal non-LPRs in the country for a chance at lawful living or to provide them with any legal or procedural benefits under the INA. The distinction created by the IIRIRA amendment to 8 U.S.C. § 1182(h), in conjunction with 8 U.S.C. § 1228(b)(1), is the anomaly in the treatment by Congress of non-LPRs vis-à-vis LPRs. It is therefore not rational to treat LPR aggravated felons with family hardship claims worse than non-LPR aggravated felons who have family hardship claims and who have committed the same crimes.

Furthermore, the government's proffered ground for why LPR aggravated felons are deserving of harsher treatment—that LPRs are accorded greater benefits and therefore greater responsibili-

ties than non-LPRs, which responsibilities they have violated by committing an aggravated felony—actually flies in the face of long-standing Supreme Court precedent. To hold that non-LPRs are somehow under a lesser obligation to follow the law would contravene the Supreme Court's clear holding that illegal aliens are "subject to the full range of obligations imposed by the State's civil and criminal laws." *Plyler*, 457 U.S. at 215, 102 S.Ct. 2382. Conversely, "[a]lthough it is certainly true that additional duties can be imposed on legal residents, it does not make sense that one of those duties is a particular responsibility to follow the law." *Song*, 82 F.Supp.2d at 1133. As the *Song* court aptly observed, "[a]ll individuals present in the United States have a duty to follow the law, and nothing about the position of legal residents makes it more important that they follow the law than any other individual." *Id.* at 1133–34.

The government offers several other putative grounds, beyond those adopted by the Seventh Circuit, for a rational relationship between the distinction in 8 U.S.C. § 1182(h) and the purpose of the IIRIRA of expediting the removal of criminal aliens from the United States. First, the government argues that closing off discretionary relief under 8 U.S.C. § 1182(h) from non-LPR aggravated felons was unnecessary because, at the same time Congress passed section 348(a) of the IIRIRA amending 8 U.S.C. § 1182(h), Congress provided in the IIRIRA for the speedy removal of criminal non-LPRs through expedited proceedings under 8 U.S.C. § 1228(b). These 8 U.S.C. § 1228(b) expedited removal procedures precluded non-LPRs from eligibility for any discretionary relief and from many of the procedural protections afforded LPRs subject to removal proceedings under 8 U.S.C. § 1229a. However, 8 U.S.C. § 1228(b)(1) specifically allows the Attorney General to institute removal proceedings against non-LPR aggravated felons

under 8 U.S.C. § 1229a, thereby preserving the eligibility of these non-LPR aggravated felons for extreme family hardship waivers under 8 U.S.C. § 1182(h). The court thus finds that the presence of 8 U.S.C. § 1228(b) does not, standing alone, provide a rational basis for the disparity of treatment under 8 U.S.C. § 1182(h), because, as the government admits, the fact remains that non-LPR aggravated felons in section 1229a removal proceedings who have citizen or LPR family members are eligible for relief under 8 U.S.C. § 1182(h) while LPR aggravated felons in section 1229a removal proceedings who have citizen or LPR family members are not eligible for discretionary relief. *Cf. Francis*, 532 F.2d at 273.

Additionally, the court notes that the peculiarity of this result has led some courts and commentators to conclude that Congress must have erred in precluding only LPR aggravated felons from seeking discretionary relief under 8 U.S.C. § 1182(h). *See Song*, 82 F.Supp.2d at 1133 n. 15; Bruce Robert Marley, Comment, *Exiling the New Felons: The Consequences of the Retroactive Application of Aggravated Felony Convictions to Lawful Permanent Residents*, 35 San Diego L.Rev. 855, 877 n. 123 (1998). The fact that the disparity of treatment resulting from the IIRIRA amendment of 8 U.S.C. § 1182(h) may have arisen from a mistake or legislative oversight, however, does not make it any less irrational and therefore infirm as a violation of equal protection. *Cf. United States v. Marshall*, 908 F.2d 1312, 1325 (7th Cir.1990) (en banc) (noting that "[e]ven laws that resulted from mistakes in the drafting process or ignorance in the halls of Congress survive if a rational basis may be supplied for the result").

The government also argues that the practical effect of the distinction in 8 U.S.C. § 1182(h) is mitigated by the INS's power under 8 C.F.R. § 238.1(e) to request

that an IJ discontinue a non-LPR aggravated felon's removal proceedings under 8 U.S.C. § 1229a and to then institute removal proceedings under 8 U.S.C. § 1228(b), thereby precluding the non-LPR aggravated felon from seeking discretionary relief under 8 U.S.C. § 1182(h). The court notes, however, Congress did not pass 8 C.F.R. § 238.1 as part of the IIRIRA in 1996. The Department of Justice adopted the regulations in 7 C.F.R. § 238.1 in early 1997. *See* Inspection and Expedited Removal of Aliens, 62 Fed.Reg. 10312, 10366 (Mar. 6, 1997) (to be codified at 8 C.F.R. pt. 238); Inspection and Expedited Removal of Aliens, 62 Fed.Reg. 444, 489 (proposed Jan. 3, 1997) (to be codified at 8 C.F.R. pt. 238). Although the standard is quite minimal, rational basis "review does require that a purpose may conceivably or 'may reasonably have been the purpose and policy' of the relevant governmental decisionmaker." *Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) (quoting *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 528–529, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959)). In passing the amendment to 8 U.S.C. § 1882(h) in the IIRIRA, Congress could not possibly have intended to distinguish between LPR and non-LPR aggravated felons on the basis of an administrative rule which the Department of Justice had not yet even published as a proposed regulation in the *Federal Register* when the IIRIRA was signed by the President on September 30, 1996. As such, the operation of 8 C.F.R. § 238.1(e) cannot render *nunc pro tunc* an otherwise irrational statutory classification rational for equal protection purposes.

Additionally, the government argues that Congress may have rationally concluded that the likelihood of a non-LPR aggravated felon being able to actually obtain a 8 U.S.C. § 1182(h) waiver is mainly hypothetical because such aliens are unlikely to have the necessary employment and privilege or standing in society required to make a showing of extreme family hardship. However, Congress is presumed to be aware of the interpretation and operation of 8 U.S.C. § 1182(h) prior to the passage of the IIRIRA, *see, e.g., Lorillard v. Pons*, 434 U.S. 575, 580–81, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), during which time non-LPRs were eligible for discretionary extreme family hardship waivers under 8 U.S.C. § 1182(h). It would therefore be irrational for Congress to assume that no non-LPR aggravated felons would receive discretionary waivers under 8 U.S.C. § 1182(h) when Congress's own enactments have created the eligibility of non-LPR aggravated felons for such waivers. Indeed, the government argues that, by enacting 8 U.S.C. § 1228(b)(1), allowing the Attorney General to "hand-select" some non-LPR aggravated felons for section 1229a removal proceedings and thus 8 U.S.C. § 1182(h) eligibility, "Congress may have wanted the Attorney General to be able to hand-select a few non-LPRs and place them in § 240 removal proceedings, as opposed to § 238(b) expedited removal proceedings, so they could seek a § 212(h) waiver." Supplemental Response to Petitions for Writ of Habeas Corpus (Dkt. No. 8) at 24. If one accepts this argument, or even simply acknowledges this discretionary power of the Attorney General to hand-select certain non-LPR aggravated felons for removal under 8 U.S.C. § 1229a, one must conclude that Congress knew it was constructing a scheme whereby some non-LPR aggravated felons would be eligible for and receive 8 U.S.C. § 1182(h) waivers but no LPR aggravated felons would. In doing so, Congress "created a distinction which therefore places an incentive on being an illegal immigrant rather than a legal immigrant and which punishes those with closer ties to the United States." *Song*, 82 F.Supp.2d at 1133. Such a distinction, the court concludes, is not rational.

The petitioner has, in the court's view, negatived every basis which might support the disparity between LPR and non-LPR aggravated felons under 8 U.S.C. § 1182(h). The court has also attempted, as it must, to conceive of bases for concluding that there is a rational relationship between the disparity of treatment and some legitimate governmental purpose behind 8 U.S.C. § 1182(h), as amended by section 348(a) of the IIRIRA. The court has, however, failed in that task. The court cannot imagine a rational basis that Congress could have had for choosing to disadvantage LPR aggravated felons, as against non-LPR aggravated felons, when both have been convicted of the same crime, with regard to eligibility for discretionary extreme family hardship waivers under 8 U.S.C. § 1182(h). The court is compelled to agree with the *Song* court that "[t]his distinction simply defies logic, and as such, violates the equal protection clause of the Constitution," as applied to the petitioner under the Fifth Amendment Due Process Clause. 82 F.Supp.2d at 1134.

## III. CONCLUSION

The Petition for Writ of Habeas Corpus [Dkt. No. 1] in case number 3:00–CV–2402 is GRANTED, and the Petition for Writ of Habeas Corpus [Dkt. No. 1] in case number 3:00–CV–2466 is therefore DENIED as moot. To remedy the equal protection violation, the court hereby orders that this matter be remanded to the Board of Immigration Appeals for further proceedings to allow plaintiff to pursue her claim for a discretionary waiver of removal on the basis of extreme family hardship under 8 U.S.C. § 1182(h). The court by this ruling

does not express any opinion on the merits of petitioner's application for discretionary relief.

All pending motions not otherwise ruled upon in case number 3:00–cv–2402, including the petitioner's Motion for Stay of Deportation [Dkt. No. 3] and Motion for Release on Petitioner's Own Recognizance [Dkt. No. 7], are DENIED as moot.[8] The clerk is directed to close both cases: to enter judgment for the petitioner in case number 3:00–CV–2402 and to dismiss case number 3:00–cv–2466 without prejudice.

**SO ORDERED.**

8. It is the court's understanding that, because the court has granted the writ, the INS has no authority to, and will not, remove the petitioner until she has been granted an opportunity to apply for a discretionary waiver under 8 U.S.C. § 1182(h) and the Attorney General

has acted on that application. If the court is mistaken in this regard, the court would expect the government to advise the petitioner's counsel promptly to that effect, and the petitioner may then renew her motion to stay her removal.